# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BLAKE MARINE GROUP, LLC | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 19-468 |
| | § | |
| EPIC ALABAMA RECYCLERS, LLC, | § | *In Admiralty* |
| *In personam*, and the | § | *In Personam* |
| NOBLE AMOS RUNNER, | § | *In Rem* |
| Her engines, tackle, furniture, | § | |
| Equipment, appurtenances, etc., *in rem*, | § | |
| | § | |
| Defendants. | § | |

## AFFIDAVIT OF ELI ZATEZALO

STATE OF  PA

COUNTY OF  Butler

BEFORE ME NOW, the undersigned Authority, personally came and appeared:

### ELI ZATEZALO

Who, being duly sworn, did depose and state:

1. He is the President of Blake Marine Group, LLC ("Blake");

2. He is familiar with and was personally involved with the services provided by Blake to the NOBLE AMOS RUNNER related to the towage of the rig from the West Cameron area of the Gulf of Mexico to Mobile, Alabama. Further, He is familiar with and has personal knowledge about the physical condition of the NOBLE AMOS RUNNER. The information below is attested to within his capacity, knowledge and review of business records:

3. At the time of its purchase by Epic Alabama Recyclers ( Epic ) the NOBLE AMOS RUNNER was capable of being deballasted and towed by water in the same

manner as a typical semi-submersible Mobile Offshore Drilling Unit (MODU);

4. The NOBLE AMOS RUNNER is designed to be transported from one location to another, either for drilling, shipyard work or lay up, by navigating it as a water born floating vessel that is placed under towage;

5. While stacked offshore and during the voyage, the NOBLE AMOS RUNNER's equipment was unimpaired;

6. While stacked offshore and during the voyage, the NOBLE AMOS RUNNER had operational navigation equipment onboard;

7. While stacked offshore, the NOBLE AMOS RUNNER was not permanently moored to the seabed, and its operational ballasting/deballasting system enabled it to be refloated for movement to new locations;

8. His company directly operated the ballasting systems in order to refloat the vessel and allow it to be navigated on water;

9. While being refloated in its offshore location and during the voyage, no employee of EPIC was onboard the NOBLE AMOS RUNNER;

10. While stacked offshore and during the voyage, both sets of the main generator and the emergency generator set were operational, allowing the NOBLE AMOS RUNNER to self-generate power;

11. His company provided helicopter transportation for the riding crew of the NOBLE AMOS RUNNER to make ready and complete the tow to Mobile, Alabama;

12. While making ready for and during the voyage, the riding crew used onboard fuel from a starboard pontoon tank to fill the day tank for daily consumption;

13. While making ready for and during the voyage, his company provided food for the riding crew;

14. While making ready for and during the voyage, the riding crew utilized the galley, including the stove, every day to prepare meals;

15. The NOBLE AMOS RUNNER had sufficient potable water onboard which enabled the riding crew to take daily showers, utilize the toilets and clean cooking equipment;

16. Prior to the voyage, the NOBLE AMOS RUNNER was surveyed and found to be in good material condition and suitable for coastwide towage between berths;

17. For the duration of the voyage, the NOBLE AMOS RUNNER remained in a condition suitable for transportation while under tow and currently remains in that condition

18. The NOBLE AMOS RUNNER was successfully moved to Mobile, Alabama, during March 2019, with its equipment unimpaired and the riding crew onboard;

19. The contemplated scrapping of the NOBLE AMOS RUNNER has not altered its ability to move locations;

20. The NOBLE AMOS RUNNER was and has not been scrapped to date;

21. The NOBLE AMOS RUNNER remains capable of being deballasted and towed on water;

22. EPIC signed an agreement in June 2019, recognizing and expressly committing to making its payments for the services provided by Blake;

23. Blake's invoices for the services remain unpaid;

24: He is familiar with and monitors the market for purchase and sale opportunities

of vessels similar to the NOBLE AMOS RUNNER and has personal knowledge that the Amos Runner is currently being marketed for sale to buyers outside of the United States, which would require the vessel to be towed by water and navigated as a condition of its purchase and that no limitation is being marketed to said buyers indicating the AMOS RUNNER could not be navigated to foreign ports in order to facilitate a sale, and in fact, there is no reason the AMOS RUNNER could not be sold to a foreign buyer and navigated by water for delivery to same.

I declare that the above and foregoing statements are true and correct.

Dated this 24th day of October, 2019.

_____
ELI ZATEZALO, AFFIANT

SWORN AND SUBSCRIBED BEFORE ME, this the 24th day of October, 2019.

_____
NOTARY PUBLIC

My Commission Expires: Sept 20, 2020

```
COMMONWEALTH OF PENNSYLVANIA
         NOTARIAL SEAL
Mary M. Colaizzi, Notary Public
   Ross Twp., Allegheny County
My Commission Expires Sept. 20, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES
```