IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BLAKE MARINE GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 19-0468-CG-B |
| ) | |
| EPIC ALABAMA RECYCLERS, ) | |
| LLC, in personam, and the NOBLE ) | |
| AMOS RUNNER, her engines, ) | |
| tackle, furniture, equipment, ) | |
| appurtenances, etc., in rem, ) | |
| | |
| Defendants. | |

## ORDER

This matter is before the Court on the motion of Epic Alabama Recyclers LLC (hereafter "EPIC") to dismiss (Doc. 23), Plaintiff's response in opposition (Doc. 27), EPIC's reply (Doc. 28), Plaintiff's sur-reply (Doc. 31), the motion of the U.S. Maritime Security, LLC ("U.S. Maritime") for payment *of in custodia legis* expenses and for release as the substitute custodian (Doc. 33), EPIC's motion for release of the NOBLE AMOS RUNNER and to enforce the parties' settlement and release agreement (Doc. 36), and U.S. Maritimes' response to EPIC's motion to release (Doc. 38).

EPIC moves to dismiss the arrest of the NOBLE AMOS RUNNER ("AMOS RUNNER") pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that the AMOS RUNNER is not a "vessel" to which a maritime lien could attach. EPIC asserts that the AMOS RUNNER was not a vessel because it was purchased for scrap from cold storage, was not capable of maritime commerce, did not engage in

maritime commerce, and was prohibited by the Purchase and Sale Agreement from engaging in any maritime commerce. Plaintiff disagrees, arguing that the AMOS RUNNER has the physical characteristics of a vessel, remains capable of being de-ballasted and moved across water and is in fact currently being marketed for sale to foreign buyers which would require her to be towed and navigated across water.

A motion to dismiss for lack of subject matter jurisdiction may be raised at any time in the proceedings. FED.R.CIV.P. 12(h)(3). Where a motion to dismiss raises jurisdictional issues and does not implicate the underlying merits of the case, it is a factual attack which may be properly brought under Rule 12(b)(1). *See Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). "When a party raises a factual attack to subject matter jurisdiction—as opposed to a facial challenge based merely on the allegations in the complaint—the district court is not obligated to take the allegations in the complaint as true." *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011) (citation omitted). "Instead, the court may consider extrinsic evidence such as deposition testimony and affidavits" and "may independently weigh the facts and is not constrained to view them in the light most favorable to the non-movant." *Id.* (citation and internal quotations omitted).

EPIC correctly points out that a maritime lien for necessaries can only attach to a "vessel." *See* 46 U.S.C. § 31342(a)(1). "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C.A. § 3. To be a vessel, a

watercraft does not have to be in use for transportation on water, but only "capable of being used" in that manner.  It is also not necessary that it be used primarily for that purpose. *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 496 (2005). For instance, dredges are primarily used for digging the ocean bottom but are generally considered vessels because they also transport equipment and workers over water. *Id.* at 492, 496.

There is a distinction between watercraft temporarily stationed in a particular location and those permanently anchored to shore or the ocean floor. *Id.* at 493 (2005).  "A watercraft is not 'capable of being used' for maritime transport [and therefore not a vessel] in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement." *Id.* at 494.  A structure's status as a vessel does not change while a ship "is at anchor, docked for loading or unloading, or berthed for minor repairs," but it may lose its vessel status if it is taken permanently out of the water even if there is a remote possibility that it may one day sail again. *Id.* (citations omitted).  The question is "whether the watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one." *Id.* at 496 (citation omitted).  To answer that question we must look "to the physical attributes and behavior of the structure, as objective manifestations of any relevant purpose, and not to the subjective intent of the owner." *Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115, 128 (2013).

After reviewing the facts presenting by the parties the Court finds the AMOS

RUNER is a vessel and that *in rem* jurisdiction is proper on that basis. As Plaintiff points out, the AMOS RUNNER at all times could, and still can, be refloated, has operational running lights which were utilized in the tow, ballast tanks and pontoons for floatation, pump rooms containing pumps for saltwater, ballast, fuel oil, engine cooling, bilge, drill water, and potable water transfer. (PageID.166, 169).

The fact that it was towed as a "dead ship" and that EPIC had contractually agreed not to use the AMOS RUNNER to engage in any maritime commerce does not change the physical attributes and behavior of the structure. Such labels and contractual obligations indicate only the parties' subjective intent which do not affect whether it is practically capable of transportation over water. The vessel has not been scrapped at this time and retains its ability to be used as a means of transportation on water.  The AMOS RUNNER retains its ability to be refloated in the exact same way it has been for more than two decades; it retains its operable ballasting system; its configurations enabling mobility remain unimpaired; it retains the ability to self-generate power; it retains onboard fuel necessary for daily consumption; it retains an operable galley; it retains onboard potable water necessary to support her crew; it actually houses a crew; it retains its ability to float on water and move from location to location; and it continues to be marketed for sale to oversea-buyers. (PageID.158-163).  As such, the Court finds that the AMOS RUNNER is a vessel.

In order to resolve this dispute, Plaintiff and EPIC entered into a Settlement and Release Agreement on December 13, 2019, which provided for the release of the

AMOS RUNNER as a material consideration for the settlement. (PageID.233 ¶ 3(a)).  Even if this Court did not have *in rem* jurisdiction over the AMOS RUNNER, the complaint asserts both *in rem* and *in personam* jurisdiction and the parties do not dispute that this Court has jurisdiction to order the release of the vessel. EPIC asks this Court to enforce the agreement and issue an Order releasing the AMOS RUNER from the Warrant of Arrest pursuant to Rule E(5)(c).  The agreement also required Plaintiff to make an initial payment to EPIC in the amount of $175,000.00 with the balance agreed upon to be paid over the next nine months. (PageID.233 ¶ 2(a)(i)).  EPIC does not indicate in its motion whether Plaintiff has fulfilled its payment obligations under the settlement agreement.

U.S. Maritime, as the substitute custodian of the AMOS RUNNER has moved for an order directing that proceeds from the settlement be paid into the Court's Registry, that they be paid first from the proceeds and that U.S. Marine be released from its duties as substitute custodian.  U.S. Maritime states that the balance owed through December 22, 2019 is $46,080.00. (Page.ID.201).  "A substitute custodian is entitled to reimbursement for actual expenses incurred, so long as they are reasonable and inured to the benefit of all parties." *Julien v. "M/V PACIFIC II*, 2010 WL 11647170, at *4 (S.D. Fla. July 2, 2010). "Expenses furnished *in custodia legis* are allowed administrative priority because they are necessary to preserve the *res*, and it is in the best interest of all creditors that the *res* be preserved." *Id.* (quoting *Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve Ticaret A.S.*, 10 F.3d 176, 182 (3d Cir. 1993)). In this case, U.S. Maritime agreed to

5

serve as the substitute custodian, thereby alleviating Plaintiff of its obligation to submit sums to cover expenses to the Marshal as required by Civil Local Rule 104(j). Accordingly, the Court finds that U.S. Maritime is entitled to the same protection as the U.S. Marshal.

## CONCLUSION

In light of all of the foregoing the Court concludes that although the Court finds the AMOS RUNNER is a vessel, EPIC's motion to dismiss (Doc. 23) is **MOOT**, since the Court has jurisdiction over this matter regardless of the status of the AMOS RUNNER and Plaintiff has settled its claims against EPIC. The motion of U.S. Maritime for payment of *in custodia legis* expenses and for release as the substitute custodian (Doc. 33) and EPIC's motion for release and to enforce the settlement agreement (Doc. 36) are **GRANTED** and it is **ORDERED** as follows:

1. Plaintiff, Blake Marine Group, LLC, shall immediately pay into the Court's Registry a portion of the proceeds it should have received from EPIC under the Settlement Agreement. Plaintiff shall pay the amount of **$75,000.00** to the Court to cover the *in custodia legis* expenses and any other expenses that arise from the claims asserted in this matter. If EPIC has not yet paid Plaintiff the initial payment it was required to pay under the Agreement, then EPIC is ordered to immediately pay **$75,000.00** of the $175,000.00 payment into the Court's Registry, and submit the remainder of the payment to Plaintiff.

2. Upon payment of **$75,000.00** into the Court's Registry, the NOBLE AMOS RUNNER is **RELEASED** from arrest and the U.S. Maritime Security, LLC is

**RELEASED** as the substitute custodian.

3. The fees due U.S. Maritime Security, LLC for *in custodia legis* expenses shall be paid from the funds received into the Court's Registry. After release of the NOBLE AMOS RUNNER, U.S. Maritime Security should submit a motion to the Court for payment that includes an accounting of the amounts owed and that reports whether Plaintiff agrees to the payment.

**DONE** and **ORDERED** this 30th day of December, 2019.

    /s/ Callie V. S. Granade
    SENIOR UNITED STATES DISTRICT JUDGE